[No. 17938.   Department Two.   August 28, 1923.]

*In the Matter of the Petition of the* City of Seattle, *in Condemnation Proceedings.*

Hilma Westberg, *in Person and as Executrix etc., Appellant,* v. The City of Seattle, *Respondent.*[1]

Cancellation of Instruments (6, 23½) — Fraud — Evidence — Sufficiency. A deed to a city for right of way purposes for a transmission line, in consideration of $200, will be cancelled for fraud, where the city agent induced the same by misrepresenting to elderly, inexperienced and bedridden people that there would be no damage, that it was unnecessary to consult an attorney, and that he would complete the matter with parties to whom the land had been contracted, when their property was damaged to the extent of $5,000, and the grant put it out of their power to complete their sale (Pemberton, J., dissenting).

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered January 3, 1923, dismissing an action to cancel a deed, after trial to the court.   Reversed.

*John Sandidge* and *Thos. A. Stiger,* for appellant.

*Thomas J. L. Kennedy, J. Ambler Newton,* and *A. C. Van Soelen,* for respondent.

Tolman, J.—In September, 1922, John Westberg and Hilma Westberg, his wife, brought an action in

[1]Reported in 217 Pac. 1002.

the superior court for Snohomish county to set aside and cancel a right of way deed made by them as grantors to the city of Seattle as grantee, conveying a perpetual easement for the construction, maintenance and operation of an electric transmission system, with all necessary appurtenances, over and across certain real estate the legal title to which was then in them.

By stipulation of the parties, the material allegations of their complaint were deemed denied and the issues thus raised were tried to the court in the general condemnation action brought by the city and then pending. After the trial, but before judgment, John Westberg died, and his personal representative was substituted as a party to this action in his stead. Thereafter a judgment was entered denying the Westbergs any relief, and dismissing their complaint, from which judgment this appeal was taken.

It appears to be admitted that John Westberg and Hilma Westberg, being then the owners in fee simple of the small acre tract of land here involved, on August 1, 1922, entered into an executory contract to sell the same to one H. J. Bowmer for an agreed consideration of $4,875. But a small cash payment was made on the contract, and the remainder of the purchase price was payable in monthly installments with interest, running over a number of years. The purchaser was given immediate possession.

It further appears that the city first dealt with the Bowmers upon the supposition that they had title, and took from them an option whereby, for a consideration of $120, they agreed to execute the desired deed. After procuring the option, the city caused the records to be searched, ascertained that the legal title was in the Westbergs, and instructed its agent not to pay the purchase money to the Bowmers without first pro-

curing a conveyance from the Westbergs. Thereupon, the city's agent approached the Westbergs, who were inexperienced in matters of this kind, somewhat advanced in years and in bad health, the husband in fact being then on his death bed, as now appears. There is no substantial dispute as to what transpired on the occasion of the first visit. Both of the Westbergs testified, and the city's agent practically admitted, that at the time he offered them but one dollar as a consideration for the conveyance, assuring them that there would be practically no damage to their property, dissuaded them from consulting their attorney, represented to them that he had acquired an option from the Bowmers and was to pay them $120. All agree that no agreement was then reached.

At the next visit, Mr. Bowmer was also present, and the bone of contention was then whether Bowmer should have the money paid by the city, or it should be paid to the Westbergs and Bowmer be given credit therefor on his contract of purchase. Still there was no agreement. On May 5, 1922, a third visit was made by the city's agent to the home of the Westberg's. They testified that he then exhibited to them a warrant payable to Bowmer and said he was going directly from there to complete the transaction with the Bowmers, and then induced them to sign an option binding them to deed the right of way upon the payment of $200, which they proposed crediting on the Bowmer contract. It is true that both Mr. and Mrs. Westberg made some statements in their testimony as to what was then said by the city's agent which might have put more experienced persons on their guard; but, taking their testimony as a whole, and considering what had gone before, we cannot hold that the Westbergs then understood, or the city's agent had reason to believe

that they understood, that he was dealing with them alone, and would leave them to bear the burden of adjusting the matter with the Bowmers. Indeed, testimony of the agent upon this vital point is entirely lacking; and moreover he did not deny the statements ascribed to him by the Westbergs to the effect that he would complete the transaction with the Bowmers and pay them the amount their option called for, notwithstanding their title was not a fee simple one as was supposed when the option was given. The agent also admits that he assured the Westbergs that there would be practically no damage to the property, and that he told them it was unnecessary to consult an attorney.

It is probable that, in an ordinary case, we could not hold that all of this was sufficient to constitute fraud; but even if no actual fraud was here intended, when it is considered that the city's agent was in effect a public officer, representing the greatest municipality of the state, which should have no wish to profit at the expense of the helpless, and was dealing with elderly, inexperienced and bedridden people, who, because of his position and the interest he served, would be slow to ascribe to him a selfish motive, we have enough to cause us to pause and consider carefully as to what effect these representations, whether made recklessly or purposely, must have had.

First, it is admitted that the agent represented that the granting of the easement and the building of the transmission line would cause no particular damage to the property, while every witness in the case who testified upon that subject fixed the value of the property at $5,000 or more, and gave a decided opinion that the granting of the easement alone, covering as it did

practically the entire tract, would substantially destroy its marketability and leave no selling value.

Second, to dissuade inexperienced persons from consulting an attorney is a thing no person representing an adverse interest should ever do, and here that act was disastrous in its consequences, not only in respect to the matters already pointed out, but also in that the Westbergs were, by their executory contract, bound to convey to the Bowmers title in fee simple, free and clear from all incumbrances.  By executing the deed complained of, they put it out of their power to comply with the terms of the Bowmer contract, and opened the way for the Bowmers to rescind and recover back the money they had paid, or to tender compliance with the contract on their part and seek damages for non-fulfillment by the grantors.

And third, even permitting the Westbergs to believe that the Bowmers' rights would be purchased as a part of the same transaction when there was no intention to do so, was to lead them into a trap which an inexperienced person could not be expected to detect until it was sprung.

These considerations, taken together with what appears to be the great inadequacy of the consideration —on this record appellants are to suffer a loss of approximately $5,000 in consideration of the $200 paid them by the city—convince us that the trial court should have entered a decree cancelling the deed and directing that the $200 paid be credited upon any judgment awarded in condemnation of the right of way, as is provided by the stipulation of the parties.

Reversed and remanded, with directions to enter a judgment in accordance with the prayer of the complaint.

MAIN, C. J., FULLERTON, and PARKER, JJ., concur.

PEMBERTON, J. (dissenting)—I concur with that portion of the opinion wherein it states "that in an ordinary case we could not hold that all of this is sufficient to constitute fraud." We should apply a rule as favorable to the city of Seattle as we do to a private corporation desiring a right of way for private purposes. I therefore dissent.