[No. 29449. Department One. February 27, 1945.]

THE STATE OF ·WASHINGTON, *on the Relation of Lloyd W. Shorett et al., Respondents*, v. BLUE RIDGE CLUB, INC., *Appellant*.[1]

*Holman, Sprague & Allen, Lucien F. Marion, Charles H. Todd*, and *Stanley B. Long*, for appellant.

*Lloyd W. Shorett* and *Edward E. Henry*, for respondents.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Altha Perry Curry, amici curiae.*

[1]Reported in 156 P. (2d) 667.

MILLARD, J.—This action, in which there is no factual question, was brought for the purpose of obtaining a decree that the public had acquired by prescription a public way or a right to cross tract E in King county owned by defendant; and, also, for the purpose of appropriating to King county for the use of the public a portion of a second, or beach, tract for bathing purposes, which right plaintiffs alleged the public had also acquired by prescription. Trial of the cause to the court resulted in the entry of a decree establishing a public way across one tract and appropriating to King county three hundred feet of water front beach property from the other tract. Defendant appealed.

The two parcels of land involved in this suit are part of a tract of 170 acres, which was owned by Puget Mill Company from 1870 to December, 1927, when it was purchased by W. E. Boeing, who, May 26, 1941, conveyed same to defendant corporation, which erected a fence around tract E in July, 1941.

The property in controversy borders on Puget Sound and lies about one mile north of the city limits of Seattle. The Great Northern Railway Company railroad runs in a northeasterly and southwesterly course near the westerly border of this area paralleling the shore of Puget Sound. The Great Northern Railway Company's right of way is one hundred feet in width, and on it is a double-track railroad on the westerly portion, which runs for miles in both directions in close proximity to the water.

The railroad in the immediate vicinity of appellant's property is so near to the waters of Puget Sound that it is supported on the westerly side by a riprap bulkhead built of large stone blocks to a height of approximately eight or ten feet. Extending westerly from the base of the bulkhead is a sandy beach, which at periods of extreme high tide or stormy weather is covered by water and upon which is found drift wood, logs, etc., common to such beaches. The strip of sandy beach is about seventy feet in width from the bulkhead to the meander line of Puget Sound and is owned by appellant. It is the strip described in the complaint as lying northwesterly of the Great Northern Rail-

way Company's right of way and to which we refer for convenience as the beach tract. This tract extends from the southerly section line of section 35, township 26 north, range 3 east, W. M., northerly for a distance of about four thousand feet.

The area upland from the railroad was platted as Blue Ridge Addition by Mr. Boeing February 24, 1930. Tract E of Blue Ridge Addition was included in the plat, but the beach tract was not included in the plat. Tract E is in the southwesterly corner of the addition and is separated from the beach tract by the railroad right of way. Tract E is irregular in shape, being 510 feet long on the northwesterly side where it abuts the railroad, 142 feet on the northeasterly side, 229 feet on the southeasterly side where it abuts the road, and 328 feet on the southerly side.

For clarity, let us describe the property involved in this action as follows: Tract E lies between Blue Ridge drive and the Great Northern Railway Company's right of way at a junction point where W. 100th street enters Blue Ridge drive from the east, and 28th avenue N. W. (also known as Triton drive) runs into it from a southerly direction. On the other side of the Great Northern right of way is North Beach. A strip of this beach between the Ballard tideland and the railroad right of way is the second parcel of land, to which we refer as the beach tract.

Prior to the year 1900, the whole Blue Ridge area, including tract E, was cut-over timberland and had growing upon it second-growth timber, vines, and underbrush to such an extent that same was practically impassable except for a few trails. The second growth of timber was cut in the year 1912, or a year later, since which time the growth of maples, alders, evergreens, vines, and underbrush has uninterruptedly continued except for development work in laying out Blue Ridge Addition.

During the summer months, the public made extensive use of the property for recreational purposes. No public agency ever assumed authority over the beach or the trails leading to it across tract E. There is some evidence respecting maintenance by the county to the effect that "lazy

husbands" had been required to work on roads leading to tract E, but those roads have been entirely obliterated and the trails involved on tract E are no part of such roads.

The surrounding land is hilly and slopes from all directions down to the area known as tract E. Two small streams run across tract E, one near the northerly end which is fed by springs and which is covered by heavy growth of vines and underbrush; the other, a larger stream, is south of the center of tract E and runs along the bottom of a small ravine. This stream was directed into a four-foot culvert and carried under the railroad tracks out onto the beach tract and into Puget Sound. Tract E, like the remainder of Blue Ridge, had scattered trees and undergrowth on it.

Blue Ridge Addition was platted in 1930 by Mr. Boeing, who laid out roads and generally cleared the area of stumps. The ground for construction of the first house in Blue Ridge Addition was broken in December, 1929. Five other houses were built between 1929 and 1936; that is, there were only six houses in Blue Ridge Addition in 1936. The location of these first houses was one-half mile north and uphill from tract E. In 1936, there was a resumption of building in this area, and at the time of the trial of this action in 1944 there were one hundred houses in Blue Ridge Addition. It appears that until 1936 only the first two houses built were occupied; the other four remained vacant and the remainder of Blue Ridge Addition, under the evidence, was simply another unsuccessful real estate venture.

Blue Ridge drive is a road which commences at the intersection of 100th street and Triton drive (28th avenue N. W.) in front of tract E and runs northeasterly parallel to the beach and then winds up through Blue Ridge Addition. No houses were upon the lots on either side of Blue Ridge drive where it parallels the beach until about 1941, when a house was constructed several hundred yards north of tract E between Blue Ridge drive and the railroad. In other words, except for the existence of Blue Ridge drive, the entire area including tract E and the portion of Blue Ridge Addition near it was completely undeveloped, uninclosed, unimproved, vacant, unoccupied, and wild.

When the roads were constructed in Blue Ridge Addition in 1929, a sewer system was also installed, one of the outfall pipes of which led from a septic tank in tract E·out into the waters of Puget Sound, where sewage was discharged. In connection with the sewer system, there was platted an easement for sewer purposes across tract E running diagonally from the northeasterly corner of tract E to a point near the bottom of the ravine carrying the larger stream where the same intersects the railroad right of way. At that point, the level of the ground was fifteen to twenty feet below the level of the railroad right of way. The easement for the sewer was along a .course which was completely unsuitable for foot travel because it crossed the northerly creek, ran in a diagonal direction across tract E, and ended in the bottom of' the ravine, from which the beach was quite inaccessible. In platting the easement for sewer purposes, it is plain that the platted easement was not intended to provide public access to the beach.

As late as 1936, Blue Ridge and all of the area around it was sparsely settled. The photographs made of the area in 1944 show that conditions were still quite wild, although Blue Ridge then had one hundred houses in that addition and the adjoining neighborhood was similarly developed.

For many years, people have gone to this area to swim and picnic. We repeat that all of the area north of the city limits of Seattle was sparsely settled, and until 1914 or 1915, when some lazy husbands were employed in extending a road which led down to this area, there was no road through to tract E. That road was extended down to, but not upon, tract E, and that road served the several houses in that neighborhood. This area was, in fact, as argued by counsel for appellant, a wilderness to which people resorted for an outing. Soldiers from Fort Lawton went there while training, and boy scouts hiked to that territory and camped there. As the neighborhood began to build and the use of automobiles became more general, the tract became more accessible and more generally visited by the public. The principal attraction was the beach; however, people parked their cars on the road and on part of tract E and frequently

camped there. In 1921, a woman had a stand for that summer only, where she sold ice cream, candy, etc.

To get to the beach, people walked across tract E on any one of several trails which roughly parallel each other from the road end and parking place down to the railroad tracks. The trail which was used more than any other was north of and parallel to the ravine through which the larger creek flowed. To get to the beach, it was, and still is, necessary to cross the Great Northern railroad right of way and the double track railroad on that right of way. After arriving on the railroad tracks, it was necessary, until steps were installed, to climb. down the riprap retaining wall, which the people did at a number of points. There was no set place for them to climb down, and they selected whatever point appeared to afford a footing.

As the neighborhood developed, some of the boys constructed wooden steps from the railroad down to the beach. Some of those steps washed away during the winter time, and consequently they were put down and removed each year for several years. The evidence does not disclose when the steps were first installed, nor in what years they were washed away, nor for how many years they were installed. About two years prior to the trial of this cause, appellant installed iron steps for the convenience of its club members at a point selected by appellant and having no necessary relationship to the location of the other steps.

Immediately upon setting foot upon the beach tract, which is completely wild, open, vacant, unoccupied, and in its natural state, people would disperse in all directions and would come to rest near the railroad wall along the several thousand feet of beach. From those resting places they would go swimming, play in the sand, etc. On page 248 of the statement of facts is a frank admission by one of the attorneys representing respondents that there is no well-defined uniform route of travel across the beach tract and, in effect, that the evidence does not establish the fact that there is a way by adverse user across any particular piece of the beach tract. It is impossible to bathe or swim or picnic in front of tract E without coming to rest upon and using

the beach tract. No objection was made by appellant or its predecessors in title to passage of people over the area so long as there was no malicious destruction of property, nor as long as a nuisance was not created by dumping of rubbish. People use the upland area between the railroad tracks and Blue Ridge drive for picnic purposes and crossed that area down to the beach in a number of places, even between tract E and the property north of tract E.

No one on behalf of the owners of any of the property ever objected to people crossing there, nor to their use of the beach, nor to their holding picnics; permission was neither sought nor affirmatively expressed. No one ever made claim to a right to cross or use the property. The area was never inclosed, nor fenced, nor were signs posted until appellant erected a fence around three sides of tract E in the summer of 1941.

In the case at bar, there is nothing in the nature of a way of necessity. The tidelands which lie immediately westerly of the beach tract are owned by the state, and there is no development on or improvement of the tidelands. Approximately a thousand feet south of the trails across tract E is a boathouse, whose operator rents boats to fishermen. There is a public street through to the railroad right of way immediately opposite the boathouse, and people who desire to reach the boathouse or the beach can travel down that street, which is 28th avenue N. W., over a trail which is perfectly passable and is, as testified by one witness on cross-examination, extensively used. The Seattle park department maintains public beaches a short distance in either direction from appellant's beach tract.

Appellant and its predecessors in title were assessed and paid taxes to King county upon tract E and the beach tract without diminution for or on account of any public way or public use of the properties, and the county has never expended any money in maintenance or improvement of a public way across tract E or the beach tract.

■ If the public is permitted by a title owner of wild, uncultivated, and uninclosed land to cross such land, or use a portion of it for recreational purposes, can that use ripen

into prescriptive right by mere continuance? That is the question posed by the facts, which are recited above, and it should be answered in the negative.

■ The tracts of land in question are wild, uncultivated, and uninclosed; hence, the use to which the public subjected those tracts is presumed to have originated by permission and to have continued as a license until some act—the evidence discloses none—of the public or public official asserted the use to be exercised as a matter of right rather than privilege. The mere continuance, no matter how long, of this use by the public cannot, of itself, change such a privilege into a right in derogation of the title. The public is a licensee and, as such, could be excluded from the whole area at any time by the title owner.

■ While an easement, which is a privilege to use another's land in a certain manner which must originate by grant or its equivalent, may be acquired by prescription (continuous adverse possession, which is open and notorious for a prescribed period, which is generally the period of the local statute of limitation applicable to real actions), the theory is that from such user it will be presumed that a grant was made. The presumption does not obtain, however, when the user originated through permission. In such case, the period for a prescriptive right will not commence until the permissive use becomes adverse; when the licensee's use becomes hostile to the licensor. 4 Tiffany, Real Property (3d ed.) 558, 559.

We held in *Northwest Cities Gas Co. v. Western Fuel Co.*, 13 Wn. (2d) 75, 123 P. (2d) 771, that an easement of right of way across the land of another, including even the establishment of a public highway over private property, may be acquired by prescription, but that prescriptive rights are not favored in law since they necessarily work corresponding losses or forfeitures of the rights of other persons; and that the burden of proving the existence of a prescriptive right rests upon the one who is to be benefited by the establishment thereof. We said that, when one enters into the possession of another's property, there is a presumption that he does so with the true owner's permission

and in subordination to the latter's title; that a user which is permissive in its inception cannot ripen into a prescriptive right, no matter how long it may continue, unless there has been a distinct and positive assertion by the dominant owner of a right hostile of the servient estate; that there is no presumption that use has been adverse where the lands in question are vacant, open, uninclosed, and unimproved. In such cases, mere use of the land of another will not, of itself, give rise to the presumption that the use has been adverse; that is, courts do not, in such cases, infer adverse user but require evidence of facts or circumstances indicating that the user was indeed adverse and not permissive.

In *Scheller v. Pierce County*, 55 Wash. 298, 104 Pac. 277, we held that where the use (as in the case at bar) is permissive in its inception, then such permissive character, being stamped on the use at the outset, will continue of the same nature and no adverse user can arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one of an opposite nature, and exclusive and independent in its character.

There was no act by any one, either the public or public officials, that could be designated hostile or an act which would put the appellant on notice that the use was intended to be under claim of right. That the use in the case at bar was presumed to be permissive at inception, is substantiated by the character of the property and the fact that the public use of it did not in any way interfere with the owner's use. From the very beginning, appellant and its predecessors in title knew of and did not object to the public's use of the two tracts so long as no malicious injury was done to the property.

Where land of the character of that in the case at bar is used, as recited above, by the public for recreational purposes, the owner has no reason for excluding the public from the land, from which the normal inference flows that the user is permissive. An owner is not required to adopt

a dog-in-the-manger attitude in order to protect his title to his property. The law which pertains to acquisition of prescriptive right, as claimed by respondents in the case at bar, by a presumed grant, should not, in view of the fact that it would result in the encumbrance of another's property, be extended so as to work that result through mere neighborly courtesy by a land owner.

We have examined all of the authorities cited, and they are either in harmony with the foregoing or are distinguishable on the facts and in principle from the case at bar. As argued in the brief of *amici curiae*, the contention of respondents has no support in law or fact, and no warrant existed for the trial court to take such a valuable property right from appellant title owner merely because appellant or its predecessors in title were gracious enough to permit the public the past use of the property for recreational purposes.

The judgment is reversed, and the cause remanded with direction to the trial court to dismiss the action, as there is no presumption, and there is no evidence, of adverse user of the trails across tract E or adverse user of the beach tract.

BEALS, C. J., STEINERT, JEFFERS, and GRADY, JJ., concur.