[No. 35627.   Department Two.   October 4, 1962.]

THE CITY OF SEATTLE, *Respondent,* v. CARL LUDWIG
NAZARENUS *et al., Appellants.*\*

\*Reported in 374 P. (2d) 1014.

*Phil McIntosh,* for appellants.

*A. C. Van Soelen* and *John P. Harris,* for respondent.

DONWORTH, J.—This action was instituted by the city of Seattle to compel appellants Nazarenus and wife to remove certain portions of their dwelling from the right of way described in an agreement for a perpetual easement for the construction, operation, and maintenance of an electric transmission system which extends from the city to its hydroelectric plants located on the Skagit River in Whatcom County. The agreement was executed and delivered to the city in 1923 by one James Fraunfelter (the alleged predecessor in interest of appellants), and filed for record in the office of the county auditor of King County on October 29, 1923.

Appellant husband testified that he bought his present home in June, 1946. In 1954, he began the construction of the addition to his living room, the walls consisting of pumice blocks (which are fireproof) and a hand-split wooden shake roof. When this addition was about three fourths completed, a representative of the city advised him that it encroached on the right of way.[1] He completed the addition in 1955 and put in the carport in November, 1956. It has the same type of roof as the addition (which is not fireproof). He estimated that the eave overhang was about five feet from a vertical line between the nearest wire and the ground.

In 1957, the city commenced this action alleging the existence of this perpetual easement, that appellants were the owners of the fee interest of the real property subject

---

[1] On May 18, 1955, the city lighting department sent appellants a registered letter advising them that, unless the obstruction (then consisting only of the living room addition) was not removed from the right of way within ninety days, the matter would be referred to the city's legal department for appropriate action.

thereto, and that they had at some time subsequent to 1923, without the knowledge or consent of the city, constructed an addition to their dwelling which encroached on the area covered by the easement and had thereby created a hazardous condition to life and property, which interfered with the city's enjoyment of its rights thereunder.

Appellants' answer denied most of the material allegations of the city's amended complaint except that it admitted the recording of the agreement for a perpetual easement in 1923 and that subsequent thereto appellants had constructed an addition to their dwelling. The answer contained two affirmative defenses (the allegations thereof being denied by the city's reply): (1) that any hazardous condition as alleged by the city was created solely by its own acts, and that the city should be restrained from creating or maintaining such condition as it affected appellants, and (2) that the perpetual easement agreement was void as being in violation of the statute of frauds.

The case was tried before the court sitting without a jury and was continued from time to time for the convenience of the parties. Some fifty exhibits were offered in evidence.

After the conclusion of the trial, the court made five findings of fact (most of which form the basis for appellants' assignments of error). These will be discussed later in this opinion.

The court's decree from which this appeal is taken states:

"It Is Hereby Ordered, Adjudged and Decreed that the defendants Nazarenus shall, within 90 days of the date of this decree, commence removal of the westerly 12.8′ of their living room from the plaintiff's transmission line right of way, and shall also, within the same period, commence the removal of the westerly 16′ of their carport from said transmission line right of way, and said removal of the portions of defendants' residence referred to herein shall be completed within 180 days of the signing of this decree; provided that the enforcement of this decree shall be stayed in the event said defendants, their heirs, successors and assigns, secure and maintain in full force and effect a good and sufficient liability insurance policy with an insurer acceptable to plaintiff City of Seattle naming said plaintiff

as an insured, and insuring against any and all loss, injury (including death) or damage of any kind whatsoever sustained by plaintiff or by any person or persons or property resulting from damage to, or destruction or breakage of, plaintiff's transmission lines caused by defendants' encroaching structures catching on fire, with a limit of $300,-000.00 for all such losses, injuries (including death) or damages resulting from each such occurrence; and provided further that said insurance policy shall be approved as to form by plaintiff's corporation counsel; that a copy of such policy or certificate evidencing the same shall be filed with the plaintiff's Superintendent of Lighting within sixty (60) days of the date hereof; and that such obligation to maintain the aforementioned insurance policy shall be binding upon said defendants' heirs, successors and assigns, and shall be an encumbrance against said defendants' real property and a covenant running with the land, said property being more particularly described as follows, to-wit:

"The north 57.32 feet of the west ½ of Lot 5 and the south 6.0 feet of the west ½ of Lot 6, Block 1, Northend Country Estates."

In their brief, appellants state the four questions presented to be as follows:

"1. Are the rights and real estate, subject matter of Exhibit No. 1 [the agreement for a perpetual easement], defined with sufficient certainty to satisfy the requirements of the Statute of Frauds or is Exhibit No. 1 a void instrument?

"2. Is there any proof that that real estate described in Exhibit No. 1 includes any part of appellant's real estate?

"3. Under any rights which may have been created by Exhibit No. 1, does respondent have the right to vary and shift its established routes of transmission lines as it may from time to time desire?

"4. Does Exhibit No. 1 grant to respondent the right to exclude the fee owners from the use and enjoyment of their property?"

Appellant first argues that the easement agreement (exhibit No. 1) violates the statute of frauds in that the legal description is defective because it refers to the location of certain stakes in the ground. They contend that their location can only be established by oral testimony, and thus under our recent decision in *Bigelow v. Mood,* 56 Wn. (2d)

340, 353 P. (2d) 429 (1960), the easement agreement is void for the reason stated.

■ In our view, the description of the land covered by the easement agreement can be ascertained from the instrument itself. It contains the following:

"The exterior boundaries of the strip or parcel of land on which the Transmission System is to be constructed, together with the approximate location of 12 towers and 25 telephone poles are shown in red on the blueprint hereto attached and hereby made a part hereof."

This attached blueprint (which is made a part of the easement agreement) shows the boundaries of the easement right of way as well as the proposed location of the various towers and telephone poles. All things shown thereon can be located by reference to the government monuments specified on the blueprint. The *Bigelow* case has no application. We hold that there is no violation of the statute of frauds, because parol evidence is not necessary to establish the boundaries of the right of way.

Appellants' second contention is that there is no proof that the legal description of the right of way contained in the easement agreement includes any of their property.

In 1923, when the agreement was executed, the land owned by appellants' predecessor in interest was unplatted. In fact, the evidence indicates that it was not then cleared but was covered with trees and had no improvements on it. For that reason the city was given the right to clear trees "from endangering said Transmission System."

Appellants challenge the trial court's finding of fact No. 1, in which the court found that the city is the grantee of a perpetual easement (which was duly recorded) for the purposes above mentioned over and across the portion of appellants' real property which is involved in this case.

■ There was substantial evidence produced by the city to support this finding, both documentary and oral testimony. Appellants introduced no evidence to the contrary. Under these circumstances, this court will not retry factual issues but will accept the findings as verities. *Thorn-*

*dike v. Hesperian Orchards, Inc.,* 54 Wn. (2d) 570, 343 P. (2d) 183 (1959). What we have just said applies also to findings No. 3 and No. 4.

Appellants, in their brief, in support of their third contention, quote portions of the easement agreement and argue that:

"*It does not*: grant a right of way; vest any title in the grantee; exclude the grantor; provide a license to change any selected route of lines."

They then point out that, when they purchased their home property in 1946, the city was maintaining its transmission line on the westerly side of the right of way and that, after appellants had extended their living room and built their carport in 1954 and 1956, respectively (these constituting the alleged obstructions), the city moved its transmission line to the easterly side of the right of way so that part of it passed over a portion of their property but not directly over the alleged obstructions.

Appellants cite two prior decisions of this court, *McCue v. Bellingham Bay Water Co.,* 5 Wash. 156, 31 Pac. 461 (1892), and *Rhoades v. Barnes,* 54 Wash. 145, 102 Pac. 884 (1909), which involved easements described in general terms (without specifying the exact location of the right of way), which held that the grantee, having once established the location of the right of way, could not thereafter change it.

These cases have no application to the situation before us where the easement agreement specifically describes the location of the right of way. Here the map attached to the agreement designates the location of all towers and poles as well as the boundaries of the right of way. Thus appellants' third contention is without merit.

The fourth question stated in appellants' brief is whether, under the easement agreement, the city has the right to exclude appellants from "the use and enjoyment of their property."

Bearing on this issue are the trial court's findings No. 2 and No. 5, reading as follows:

"II. That the defendants Carl Ludwig Nazarenus and Joanne P. Nazarenus, his wife, have erected permanent structures *commencing in September, 1954, to-wit, a living room extension and a carport,* which are located within plaintiff's transmission line right of way under the aforementioned perpetual easement *a distance of approximately 12.8 feet, and 16 feet, respectively,* and which constitute a hazard to the transmission lines presently being operated and maintained by plaintiff within said easement in that defendants' structures may catch fire and cause said transmission lines to be burned or shorted out indirectly by electrical action. [Italics ours]

"V. That in the event plaintiff's transmission lines are burned or shorted out indirectly by electrical action, or broken, by reason of defendant's structures catching on fire, the plaintiff may thereby sustain damages in the amount of $300,000.00 inasmuch as said break may cause transmission lines and poles to fall for a considerable distance to the south of defendant's property resulting in damages to and destruction of plaintiff's electrical equipment and causing personal injuries or death, and damage to property other than plaintiff's, and causing interruption of electrical service to plaintiff's customers."

Appellants have not challenged the italicized portion of finding No. 2, and, as to the remainder of it (as above noted), it is supported by substantial evidence.

Regarding finding No. 5, appellants produced no evidence whatever as to these matters. The record contains only the testimony of the city's expert witnesses whose opinions were accepted by the trial court.

The easement agreement is silent as to whether or not the property owners may place permanent improvements on the right of way. Accordingly, we must examine the agreement and endeavor to ascertain from its language the intention of the original parties to the agreement in this respect.

At the time the agreement was executed in 1923, the statutory authority of the city to acquire property and easements for the construction, operation, and maintenance of transmission lines was contained in Laws of 1909, chapter

150, § 1, as amended by Laws of 1913, chapter 45, § 1, which provided, in part, as follows:

"That any incorporated city or town within the state be, and hereby is, authorized . . . to construct, condemn and purchase, purchase, acquire, add to, maintain and operate works, plants and facilities for the purpose of furnishing such city or town and the inhabitants thereof, and any other persons, with gas, electricity and other means of power and facilities for lighting, heating, fuel and power purposes, . . . for any of the purposes provided for by this act, such city or town shall have the right . . . to acquire the right by purchase, or by condemnation and purchase, or otherwise, to any water, water rights, easements or privileges named in this act, or necessary for any of said purposes, . . ."

In *Seattle v. Faussett*,[2] 123 Wash. 613, 212 Pac. 1085 (1923), which was a condemnation proceeding to acquire an easement for an electrical transmission system, this court, after quoting the statute above referred to, said:

"It seems to be well settled law that, unless the statute in express terms specifies the nature and extent of the estate or interest which shall be taken by eminent domain proceedings, any interest or estate may be so taken which reasonably satisfies the needs of the particular public use contemplated, and that no greater estate or interest should be taken than reasonably satisfies the needs of the particular public use contemplated. . . .

"Looking alone to the act above quoted from, as the grant of the city's power of eminent domain here sought to be exercised, there seems to us but little room for arguing that the city must take the absolute fee to the right of way it seeks to acquire and have the award of compensation therefor measured accordingly, or not take any estate or interest therein. We find nothing in that act even suggesting to our minds that the city must pursue such a course; but, on the contrary, we think the concluding language above quoted falls little short of expressly authorizing the city to acquire 'easements or privileges' in land less than the

[2]Two other decisions of this court relating to this transmission line right of way are: *Westberg v. Seattle*, 126 Wash. 187, 217 Pac. 1002 (1923); *In re Skagit River Transmission Sys.*, 129 Wash. 163, 224 Pac. 385 (1924).

absolute fee simple title thereto for the public use contemplated."

In the case at bar, the perpetual easement was acquired pursuant to the statute by purchase instead of by condemnation. Since the relative rights of the parties with reference to the right of way were not specifically defined in the easement agreement, we must, in interpreting the language used therein, have in mind certain applicable legal principles.

In 28 C. J. S. 680, § 26, some of these rules of construction are discussed as follows:

"Instruments creating easements will be construed in accordance with the intention of the parties.

"In the construction of instruments creating easements, it is the duty of the court to ascertain and give effect to the intention of the parties. The intention of the parties is determined by a proper construction of the language of the instrument. Where the language is unambiguous, other matters may not be considered; but where the language is ambiguous the court may consider the situation of the property and of the parties, and the surrounding circumstances at the time the instrument was executed, and the practical construction of the instrument given by the parties by their conduct or admissions. It is generally held that the grant must be taken most strongly against the grantor, in cases of doubt; but where the instrument is drafted by the grantee it is to be construed in favor of the grantor. . . ."

The evidence does not show whether or not the agreement was drafted by the city, but that is immaterial because, even if the language is construed most strongly in favor of appellants (or their predecessor in interest), the instrument contains no ambiguity as to the fourth question stated in appellants' brief (*i.e.* whether the city may exclude them from "the use and enjoyment of their property").

In 1923, the city was granted a perpetual easement for the construction, operation and maintenance of an electric transmission system located on a specifically described right of way over, along, and across what is now appellants' property (the location of the right of way and of towers

and poles being definitely designated on the attached blueprint).

In addition, the city is given the right of access thereto for the purpose of the construction, operation, and maintenance thereof.

From a consideration of all the provisions of the easement agreement, we think that it is too plain to require interpretation (there being no ambiguity) that the city, as owner of the dominant estate, has the right to use the right of way for the purposes above mentioned, and that appellants, as owners of the servient estate, have divested themselves of all use thereof which is inconsistent with the city's use. In other words, the city has the exclusive use of the right of way for the purposes stated in the instrument and the right to perform all acts which are reasonably necessary to full enjoyment of such use thereof.

Appellants, on the other hand, have only such use of the right of way as does not materially interfere with the city's use thereof.

In findings No. 2 and No. 5 (quoted above), the trial court found that appellants' structures located on the right of way constituted a hazard to the city's transmission lines in that they may catch fire and be burned or shorted out by electrical action in which event the city might sustain damages in the amount of $300,000

". . . inasmuch as said break may cause transmission lines and poles to fall for a considerable distance to the south of defendants' property resulting in damages to and destruction of plaintiff's electrical equipment and causing personal injuries or death, and damage to property other than plaintiff's, and causing interruption of electrical service to plaintiff's customers."

Also, the city's expert, Gordon Smith, testified that appellants' obstructions constituted a hindrance to the city's right of access to the right of way for the purpose of maintenance of the transmission lines. Appellants produced no evidence to the contrary.

On the basis of the two findings and the undisputed testimony referred to, we are of the opinion that, under the

easement agreement, the maintenance of appellants' structures on the right of way is impliedly forbidden because it unreasonably interferes with the right thereby granted the city to construct, operate, and maintain an electric transmission system thereon. This is the only reasonable interpretation of the language used when viewed in the light of the situation of the original parties as it existed in 1923 when the easement agreement was executed.

We now consider appellants' last assignment of error, *i.e.* that the court erred in entering its decree on the basis of the findings of fact. Appellants, in support of this assignment, contend that the series of events referred to in finding No. 5 are unlikely to occur, and that the danger of any damage to the transmission lines is "in the realm of the fantastic." We do not agree.

In *Pacific Gas & Elec. Co. v. Minnette*, 115 Cal. App. (2d) 698, 252 P. (2d) 642 (1953), a similar problem was considered by the District Court of Appeal. The only material difference in the facts in the two cases is that there the easement agreement contained an express covenant that the grantors would not erect or maintain any building or other structure on the right of way. In the case at bar, we have interpreted the agreement as impliedly indicating the intention of the parties to be to that effect. Consequently, the question of what a court of equity should do under these circumstances is the same in each case.

In the California case, the land owner contended that his building, located on the right of way, was not an obstruction to its use by the power company. In disposing of this contention, the court said:

"Appellants contend there is no support for the court's finding that their building obstructed respondent in the use of and passage over its rights of way and in the maintenance of its power lines. But respondent's rights included the right to have the land embraced in its rights of way kept free of buildings. It requires no testimony to show that putting a building where appellants put theirs is an obstruction to respondent's use and an encroachment upon respondent's rights. Certainly passage over the land embraced within the rights of way would not be as free with

the building there as if it were not there. Equally certain is it that the dangerous proximity of building and wires is an obstruction to use."

The decree entered by the California trial court required the land owner to remove his building (which cost $9,000) from the right of way. On the appeal, the land owner strenuously argued that this was an abuse of discretion. In sustaining the mandatory injunction the District Court of Appeal thoroughly considered this contention, and, since we feel that its discussion is pertinent to our disposition of the case before us, we quote from its opinion at some length:

"Finally, appellants contend that the trial court abused its discretion in issuing its mandatory injunction requiring the removal of their building from respondent's rights of way, which removal could only be accomplished by destroying the building. They argue that this was a proper case for weighing relative hardships; that when the relative hardships between granting and denying the mandatory injunction be considered the trial court should, as a matter of law, have withheld its injunctive relief. In our former opinion we adopted this view. We granted a rehearing in order to further consider the matter. After such consideration we have concluded that the trial court did not abuse its discretion in ordering the appellants' building removed.

"It is settled law that a court of equity will in a proper case award a mandatory injunction for the protection and preservation of an easement, including, where that remedy is appropriate, an order for the removal of an obstruction already erected; but, as is generally the case, where the extraordinary remedy of mandatory injunction is asked the trial court is vested with a judicial discretion as to whether it will grant such relief or on the contrary will withhold it and relegate the parties to legal remedies. (*Clough v. W. H. Healy Co.*, 53 Cal. App. 397, 400 [200 P. 378]; see, also, *Wright v. Best*, 19 Cal. 2d 368, 386 [121 P. 2d 702].) In short, where the right to relief has been made out in such a case as this and injunctive relief is asked, there is usually posed a further question of the appropriateness of such relief. The matter is treated substantially as follows in Restatement of the Law of Torts, chapter 48, sections 933-951, inclusive: The availability of injunction against a committed tort depends upon the appropriateness of this remedy as determined by a compara-

tive appraisal of all the factors of the case including the following: The character of the interest to be protected, the relative adequacy to the plaintiff of injunction and of other available remedies such as damages; plaintiff's delay in bringing suit, plaintiff's misconduct, if any; the relative hardship likely to result to defendant if the injunction is granted and to plaintiff if it is denied; the interest of third parties and of the public, and the practicability of framing and enforcing the order or judgment. The appropriateness of injunction is to be determined as of the time of the order or judgment unless special circumstances otherwise require. In the instant case the property interests invaded by the appellants' encroachment were those of a public utility, the invaded property being dedicated to a public use. As to a comparison of the relative adequacy to the plaintiff of injunction and of the remedy of damages the following factors, among others, were presented for consideration: Encroachment was substantial, permanent and continuing, in gross violation of the plaintiff's rights of way; the situation created by appellants' building might well subject respondent to the alternative of corrective construction of its lines, or the risk of injury to third parties with resultant litigation. On the other hand, the damage alternative would be difficult to admeasure and would involve a large amount of speculation, as even corrective measures, such as raising the wires, could easily involve inconvenience and expense in future maintenance. In respect of plaintiff's delay in bringing the suit as one of the factors to be determined in considering the appropriateness of an injunction the trial court had, as we have held, found that plaintiff had not been guilty of any delay and this finding was supported by substantial evidence. The same can be said as to the factor of plaintiff's misconduct of which the trial court had found it to be free. As to the relative hardship likely to result to appellants if injunction be granted and to respondent if it be denied the situation was this: Plaintiff had proved that a tort had been committed which involved a permanent and substantial encroachment upon its rights of way. The responsibility for this encroachment was entirely that of the appellants. This wrongdoing of appellants was not in the nature of innocent mistake since both, when they purchased their property and when they constructed their building, were charged with knowledge of the respondent's rights and when, before beginning construction, their attention was specifically directed to the dangerous situation they would

be creating if they built their building as planned, their response was to the effect that respondent was in fact trespassing upon the appellants' property, had no right to have its wires running across that property and that if hazard arose it would be for the respondent to remove it by taking corrective action on its own responsibility."

In the case at bar, appellants, when they purchased their property in 1946, knew, or should have known from the public records, that the city had this easement over part of it. In 1955, when the addition to their living room was not yet completed, they were told by a representative of the city that a portion of it was on the city's right of way. Shortly thereafter, they received a letter by registered mail from the city so advising them. Nevertheless, they deliberately completed the addition to their living room and the next year they built the carport, both of which encroached on the city's right of way. We can see no excuse whatever for this intentional invasion of the city's right of way.

The trial court's decree, in so far as it orders the removal of the obstructions by appellants, is entirely justified by the facts shown by the record.

However, we think that the decree should be modified by eliminating from the paragraph hereinbefore quoted everything beginning with the words "provided that the enforcement of this decree shall be stayed  .  .  ."

This latter portion of the decree provides that the decree shall not be enforced as long as a liability insurance policy therein described with a limit of $300,000 for all specified losses shall be secured and maintained in full force and effect by appellants and their successors.

This portion of the decree is regarded as unsatisfactory by both the city and by appellants. We think that under the facts of this case the city is entitled immediately to the unobstructed use of its right of way (see annotation in 6 A. L. R. (2d) 205, 208-212), and that public liability insurance coverage is an inadequate solution of the problem.

The decree of the trial court is therefore modified by striking all of the operative paragraph beginning with the words "provided that  .  .  ." The period of 180 days allowed

for the completion of the removal of the obstructions from the right of way shall begin to run from the date of the filing of our remittitur in the superior court. In all other respects, the decree of the trial court is hereby affirmed. Neither party will recover costs on this appeal.

It is so ordered.

FINLEY, C. J., OTT, HUNTER, and HAMILTON, JJ., concur.

November 29, 1962. Petition for rehearing denied.

*Reported in 374 P. (2d) 939.