[No. 5174–1.   Division One.   August 7, 1978.]

BROADACRES, INC., ET AL, *Appellants,* v. HELEN NELSEN, ET AL, *Respondents.*

*Preston, Thorgrimson, Ellis, Holman & Fletcher, Richard E. Monroe,* and *John A. Gose,* for appellants.

*Pain & Warren* and *John K. Pain, Jr.,* for respondents.

WILLIAMS, J.—This is a controversy between Helen Nelsen, an owner of land adjacent to Longacres Race Track in King County, and Broadacres, Inc., and Washington Jockey Club, both Washington corporations, the owners and operators of the race track, who hold a permanent easement across the Nelsen property. The Superior Court trial resulted in a determination that the easement over Longacres Way is nonexclusive; that the parties' rights to

use the roadway are joint, general and unrestricted; that interference that may occur by reason of the use of the roadway by either party shall not at any time be an unreasonable interference with the other party's right of joint use; and that both parties must accommodate their respective uses of Longacres Way so that neither interferes unreasonably with the use of the other. The track owners appeal. We affirm.

The undisputed facts are as follows. Longacres Way has been one of the main routes to the parking lots on the racing grounds since 1933, when Nelsen's father owned all the land in question. In that year, the race track grounds were leased by Mr. Nelsen to Joseph Gottstein, the track owners' predecessor, along with an easement over Longacres Way. In 1945, Gottstein purchased the race track grounds; in the deed conveying the property, it was stated:

> TOGETHER WITH an easement for road purposes from the above tract extending west under the Rights of Way of Chicago, Milwaukee & St. Paul Railroad, Northern Pacific Railway and Puget Sound Electric Interurban to the Seattle–Tacoma State Highway as the same is now located and in use, situated in section 24, township 23, north, range 4 east, W.M.

Since 1945, the roadway, which divided the Nelsen land into two parcels, has been jointly used by the parties and their predecessors with only two significant incidents. In 1961, Nelsen leased one of the parcels to a third party for use as a commercial parking lot. This was protested by the track owners on the basis that such use would interfere with the ingress and egress of traffic from Longacres Race Track and was stopped after one day. In 1975, Nelsen leased the other parcel to another third party, again for a commercial parking operation. The track owners paid Nelsen $6,500 to cancel the lease. Nelsen's intention, if she is successful in this suit, is to lease both parcels for the purpose of a commercial vehicular parking operation.

It is first contended by the track owners that they have the right to the exclusive use of the roadway during race

track hours because of the expression in the deed above quoted. No such right is established by the language used. The intended arrangement for use is not stated and must be ascertained from sources outside the document.

■ The general rule is that instruments creating easements will be construed in accordance with the intention of the parties. *Seattle v. Nazarenus,* 60 Wn.2d 657, 374 P.2d 1014 (1962). And in making that construction,

> it is the duty of the court to ascertain and give effect to the intention of the parties. The intention of the parties is determined by a proper construction of the language of the instrument. Where the language is unambiguous, other matters may not be considered; but where the language is ambiguous the court may consider the situation of the property and of the parties, and the surrounding circumstances at the time the instrument was executed, and the practical construction of the instrument given by the parties by their conduct or admissions.

*Seattle v. Nazarenus, supra* at 665, quoting 28 C.J.S. *Easements* § 26, at 680 (1941). There is substantial evidence in the record to support the court's finding that

> The parties to the easement intended a joint use of the easement, i.e., for track patrons and employees on behalf of the dominant estate, and for all proper uses to which the abutting land could be put by the owner of the servient estate.

In another finding the court said

> If joint use of the easement roadway is made as a result of the use of Parcel A and/or B for parking, it will be necessary for traffic exiting Longacres periodically to give way in order for traffic to exit either Parcel A or Parcel B onto Longacres Way. It will also be necessary for Parcel A and Parcel B traffic periodically to give way to Longacres traffic.

The court also found that denying Nelsen the use of her two parcels for race track patron parking would result in an improper diminution of her right of joint use of the easement.

■ With the exception of the two incidents mentioned, the exclusive use by the race track during the racing periods has been permitted, even supported, by the Nelsens. However, that does not mean that at any point they abandoned their own right to use the roadway as owners of the servient estate. That right remains unimpaired. Race track patrons wishing to park on the Nelsen property should be free to do so. The easement does not grant the track owners the exclusive right to their patrons' parking fees. There is no evidence that the parties to the deed intended that race track patrons should be permitted to park only on the track grounds and not on the Nelsen property.

■ The next contention is that the right of exclusive use during race track hours was acquired by prescription over a 10–year period, beginning with the 1961 incident. *State ex rel. Shorett v. Blue Ridge Club, Inc.,* 22 Wn.2d 487, 156 P.2d 667 (1945). To establish a prescriptive easement over the land of another, the claimant of such right must prove that his use of the other's land has been, for the period of 10 years, open, notorious, continuous, adverse to the owner of the land sought to be subjected, and with the knowledge of such owner at a time when he was able in law to assert and enforce his rights. *Gray v. McDonald,* 46 Wn.2d 574, 283 P.2d 135 (1955); *Northwest Cities Gas Co. v. Western Fuel Co.,* 13 Wn.2d 75, 123 P.2d 771 (1942). In the present case, the hostile act lasted but one day; there is no evidence of any other adverse use during the period in question. All other use was permitted by the terms of the easement.

■ The track owners next contend that any use of the roadway that makes their use thereof "less convenient and beneficial" than before is a material interference as a matter of law. For this proposition they rely on *Seattle v. Nazarenus, supra,* and other cases which, they argue, hold that even a slight interference with the dominant owner's enjoyment of the easement is actionable. What may be considered a proper use by the servient owner is a question of fact and depends largely upon the extent and mode of use of the particular easement. *Thompson v. Smith,* 59

Wn.2d 397, 367 P.2d 798 (1962). In view of the court's finding, above quoted, that the original parties to the easement intended *joint* use thereof, the track owners cannot prevail simply by proving that Mrs. Nelsen's intended use would "inconvenience" them.

The last contention is that the court erred by refusing to make findings on the nature and extent of the interference with the track owners' rights that would be caused by the use of the two Nelsen parcels for parking. The court correctly decided that such findings would be premature inasmuch as it has not been proven that Mrs. Nelsen's intended use of her property would unreasonably interfere with the track owners' use of the easement. *See Thompson v. Smith, supra.* That remains to be seen.

Affirmed.

CALLOW and McINTURFF, JJ., concur.

Reconsideration denied February 14, 1979.

Review denied by Supreme Court May 4, 1979.