# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| EVERETT HANGAR, LLC, a Washington limited liability company, | ) ) ) | No. 73504-7-I |
| | ) | DIVISION ONE |
| Respondent, | ) ) | |
| v. | ) ) | |
| | ) | UNPUBLISHED OPINION |
| KILO 6 OWNERS ASSOCIATION, a Washington nonprofit corporation; KILO SIX, LLC, a Washington limited liability company; HISTORIC HANGARS, LLC, a Washington limited liability company; HISTORIC FLIGHT FOUNDATION, a Washington nonprofit corporation; and JOHN SESSIONS, an individual, | ) ) ) ) ) ) ) ) ) ) ) | |
| Appellants. | ) ) | FILED: August 8, 2016 |
| | ) | |

LEACH, J. — Kilo 6 Owners Association, Kilo Six LLC, Historic Hangars LLC, Historic Flight Foundation (collectively "Defendants"), and John Sessions appeal a trial court order granting a permanent injunction to Everett Hangar LLC and awarding it attorney fees. The record supports some, but not all, of the injunctive relief the trial court granted. It does not support the trial court's dismissal of Everett Hangar's claims against Sessions without prejudice instead of with prejudice. Finally, the trial court did not make adequate findings and conclusions to permit review of its fee award. Thus, we affirm in part, reverse in

part, and remand for further proceedings consistent with this opinion. Because no party substantially prevails on appeal, we deny each party's request for attorney fees and costs on appeal

## FACTS

This case arises out of a dispute between Everett Hangar and the Foundation, which occupy adjacent lots at the Snohomish County Airport (Paine Field).

In 2007, Snohomish County (County) leased (initial land lease) Sector 7 of Paine Field to Kilo Six LLC for use for "storage of aircraft, maintenance and restoration of aircraft, and with specific reference to the facility of the John T. Sessions Historic Aircraft Foundation, additional uses of food preparation, food service, public display of aircraft, public education, and public meeting uses." The lease authorized Kilo Six to build leasable hangars on what later became "Lot 11" and "Lot 12" and an historical aircraft foundation building on "Lot 13." Because Kilo Six intended to develop this land into three separate parcels with three separate buildings occupied by three different users, Kilo Six executed a declaration of covenants, conditions, and restrictions (initial CC&Rs) to create a general operation plan for the leased property.

In January 2008, Kilo Six and Weidner Investment Services Inc. (Weidner) entered into a purchase agreement for an aircraft hangar that Kilo Six was

constructing on property that is now Lot 12. Weidner is a property management firm that operates a Learjet 60 and a Gulfstream IV, private jets its employees use to fly to its properties across the United States and Canada. Dean Weidner, Weidner's CEO (chief executive officer), also uses the jets for personal flights. It transferred its contractual rights under the purchase agreement to its wholly owned subsidiary, Everett Hangar. The sale closed in July 2008, and Everett Hangar took possession of the property.

In January 2009, the County agreed to a binding site plan that subdivided Sector 7 into three adjacent parcels running west to east: Lot 11, Lot 12, and Lot 13. To facilitate separate ownership and operation of each lot, Kilo Six and Snohomish County also separated the initial land lease into three separate leases, one for each lot. Kilo Six then assigned Lot 11 to Historic Hangars, Lot 12 to Everett Hangar, and retained Lot 13.

Lots 11 and 12 have the same general configuration: a hangar on the southern part of the lot and a section of a Paine Field aircraft ramp to the north, used for aircraft takeoff and landing. Lot 13 remains vacant. The lease for each lot describes the "intended use" of Lot 11 as "aircraft hangar for business or private use, including historic aircraft hangar and museum, public education and event venue, with associated space for aircraft repair and maintenance, office, meeting room, lounge, and parking."

John Sessions is the managing member of Kilo Six and Historic Hangars and is the president of the Foundation. The parties initially understood that Sessions would construct a flight museum on Lot 13. The 2008 economic downturn caused Sessions to place the museum on Lot 11. Sessions's failure to inform Everett Hangar of this change became a source of most of the tension that produced this lawsuit. In August 2009, Historic Hangars subleased Lot 11 to the Foundation. On Lot 11, the Foundation displays and operates vintage planes, hosts classes, and puts on several events throughout the year.

Also in August 2009, Kilo Six, Everett Hangar, and Snohomish County signed the amended and restated ground leasehold declaration of covenants, conditions, and restrictions for Kilo 6 Hangars (CC&Rs). The CC&Rs govern the leasehold owners' use of the three lots and created the Kilo 6 Owners Association (Association) to organize the lots and enforce the provisions of the CC&Rs. Sessions is the president of the Association, and Everett Hangar is an owner-member. The CC&Rs grant each lot leasehold owner an easement over portions of aircraft ramps on any lot to move aircraft. They also require the parties to cooperate with each other. And they authorize a party to seek damages, injunctive relief, and attorney fees and costs for another owner's violation of the terms of the CC&Rs or Association rules. The initial rules and regulations," attached as an appendix to the CC&Rs, state that the lots "may be

used for aviation-related purposes and for any purpose reasonably incident to such purposes." They also contain prohibitions against noxious activities and authorize the board of directors of Kilo Six LLC to adopt safety and security measures.

The Foundation facilities on Lot 11 are open from 10:00 a.m. to 5:00 p.m. Tuesday through Sunday. The Foundation displays aircraft on its ramp, as well as on the Paine Field ramp with the airport's permission. During some of its public events, the Foundation blocks the entire Lot 11 ramp and sets up vendor booths and tents on it. The Foundation also uses Lot 13 for volunteer parking. A chain link fence encloses Lot 13, except on the side of the lot facing the airport. There, the Foundation sets up bicycle fencing, freestanding fencing with sections that can be linked together, during larger events. The fencing has an entrance gate that can be locked. A sign on the gate reads, "Gates must be closed and locked at all times."

Everett Hangar operates on-demand business flights for Weidner's employees and personal flights for Dean Weidner out of Lot 12. It follows its preset flight schedule only 30 percent of the time. Everett Hangar's two jets conduct over 100 arrivals and departures every year. Everett Hangar also intends to sublet the second bay of its hangar, adjacent to the one it currently uses, to another company. Everett Hangar can move aircraft from Lot 12 to the

airport runway over two routes. One includes use of its easement over the aircraft ramp on Lot 11 easement. Weather conditions can dictate which route it uses.

Everett Hangar filed this lawsuit, asking for damages and injunctive relief. It alleged that Sessions, Historic Hangars, and the Foundation violated the aircraft ramp easement in the CC&Rs with the Foundation's frequent parking of its aircraft on the Lot 11 ramp and other activities on the ramp during its events. Everett Hangar claims these actions either directly obstructed its easement or caused objects to be within the jet blast zone of its planes. Everett Hangar also alleged violations of safety and security provisions in the CC&Rs and violations of the Association bylaws for failure to enforce the CC&Rs against John Sessions, Kilo Six, and the Association. Finally, it alleged that Sessions breached his fiduciary duty as the director of the Association.

The Defendants moved for summary judgment, and the trial court granted it in part, dismissing Everett Hangar's damage claims but allowing its claims for injunctive relief and against Sessions to go to trial.

At the close of trial, the court concluded that the Foundation and Historic Hangars infringed on Everett Hangar's right to use the easement over Lot 11; that Kilo Six, Historic Hangars, and the Foundation's use of Lot 11 and Lot 13 violated the safety and security provisions in the CC&Rs and the initial rules; and

that the Association, plus its member organizations Historic Hangars and Kilo Six, failed to enforce the CC&Rs. It concluded that Defendants did not violate the Association bylaws and that Sessions was not personally liable for the actions of the Defendants. It denied relief on this basis, dismissing all claims against him without prejudice. Finally, it concluded that injunctive relief was necessary to protect Everett Hangar's easement rights and to mitigate safety and security concerns. It deemed Everett Hangar the prevailing party and awarded it attorney fees and costs under the provision of the CC&Rs.

In its order granting an injunction, the trial court enjoined the Association, Kilo Six, Historic Hangars, the Foundation, and "ITS OFFICERS, AGENTS, EMPLOYEES, INVITEES, AND GUESTS" from placing objects on the Lot 11 ramp that would interfere with any aircraft's object free area and within the jet blast safety zone of aircraft on Lot 11 or Lot 12. It enjoined the Defendants from blocking the western or eastern exits to the Kilo 7 taxi lane or allowing any person except trained flight personnel to enter and remain on the ramp to Lot 11 and Paine Field while an aircraft is moving toward or returning from the Kilo 7 taxi lane. It further enjoined the Defendants from allowing or permitting any person to enter Lot 12 from its properties without express permission of Everett Hangar and from propping open security gates or entry points on Lots 11 or 13 unless a security guard is present at the gate. Finally, it required the Defendants to build

a permanent security fence along the Lot 13 boundary, similar to the fence surrounding Paine Field, to remain until the trial court deemed it unnecessary.

In a separate order, the trial court awarded Everett Hangar $819,053.57 in fees plus statutory costs.

## STANDARD OF REVIEW

This court reviews a trial court's injunction and its decision about the terms of the injunction for abuse of discretion.[1]  A trial court abuses its discretion if it bases its order on untenable grounds or makes a manifestly unreasonable or arbitrary decision.[2]  This court reviews findings of fact for substantial evidence and conclusions of law de novo.[3]  This court reviews de novo the initial determination of the legal basis for an attorney fee award and reviews for abuse of discretion a trial court's decision to award attorney fees and the reasonableness of the fees' amount.[4]

## ANALYSIS

The Defendants challenge the provisions of the trial court's injunction protecting aircraft easement rights on three grounds:  (1) the aircraft easement does not provide Everett Hangar with the rights that the injunction protects; (2)

[1] Kucera v. Dep't of Transp., 140 Wn.2d 200, 209, 995 P.2d 63 (2000).
[2] Kucera, 140 Wn.2d at 209.
[3] Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003).
[4] Cook v. Brateng, 180 Wn. App. 368, 375, 321 P.3d 1255 (2014).

the Foundation did not violate Everett Hangar's easement rights; and (3) the terms of the injunction are arbitrary, overly broad, and not supported by the evidence. The Defendants make similar challenges to the injunction provisions protecting rights to safety and security under the CC&Rs. Finally, the Defendants challenge the trial court's fee award on three grounds: (1) no party should have been awarded attorney fees because each prevailed on major issues, (2) the trial court did not use the proportionality rule to calculate fees, and (3) the trial court awarded an unreasonable amount. We address the Defendants' claims in this order.

"A party seeking an injunction must show (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) actual and substantial injury as a result."[5] On review, this court presumes the trial court correctly ordered injunctive relief, absent an affirmative showing of error.[6] The trial court may use its broad discretion to fashion injunctive relief to fit the particular facts, circumstances, and equities of the case.[7]

Injunction Based on Easement Violation

The CC&Rs grant each lot leasehold owner an ingress and egress easement for aircraft. The Defendants claim that the trial court misinterpreted

---

[5] Resident Action Council v. Seattle Hous. Auth., 177 Wn.2d 417, 445-46, 327 P.3d 600 (2013).
[6] Resident Action Council, 177 Wn.2d at 446.
[7] Brown v. Voss, 105 Wn.2d 366, 372-73, 715 P.2d 514 (1986).

this easement and improperly required the Foundation to clear its ramp of objects within the object free area and the jet blast safety zone of any aircraft on Lot 11 or Lot 12, preventing people from entering those zones on Lot 11, and mandating that the Foundation not block Everett Hangar's exit to the west or east in any manner.

When asked to enforce an easement, a court determines and then enforces the intent of the parties who created it.[8] Interpretation of an easement presents a mixed question of fact and law.[9] The original parties' intent is a question of fact, and the legal consequences of the intent is a question of law.[10] A court looks to the plain language of the document creating an easement, considering it as a whole, to determine and give effect to the intention of the parties who created it.[11] Only when an easement's language is ambiguous or silent on a particular issue may a court consider other evidence to show the intentions of the original parties, the surrounding circumstances at the time the parties created the easement, and the practical construction disclosed by parties' conduct or admissions.[12]

---

[8] Zobrist v. Culp, 95 Wn.2d 556, 560, 627 P.2d 1308 (1981).
[9] Sunnyside Valley, 149 Wn.2d at 880.
[10] Sunnyside Valley, 149 Wn.2d at 880.
[11] City of Seattle v. Nazarenus, 60 Wn.2d 657, 665, 374 P.2d 1014 (1962); Sunnyside Valley, 149 Wn.2d at 880.
[12] Colwell v. Etzell, 119 Wn. App. 432, 439, 81 P.3d 895 (2003) (quoting Rupert v. Gunter, 31 Wn. App. 27, 31, 640 P.2d 36 (1982)); Nazarenus, 60 Wn.2d at 665.

Here, the CC&Rs grant each owner an easement for movement of aircraft over parts of the aircraft ramps on any lot:

> **12.7 Ingress and Egress Easement for Aircraft.** Each Owner shall have an ingress and egress easement over and across such portions of the airplane ramps located on any Lot as is reasonably necessary to move aircraft to or from any Building and the adjacent properties on which taxiways, runways and airport facilities are located.

*Spatial or Temporal Limitation*

The Defendants contend that the words "reasonably necessary" show the parties' intent to limit the easement to certain times and circumstances. As a result, they claim that Everett Hangar does not have an around-the-clock access to its easement over the Lot 11 ramp. Everett Hangar contends that these words limit the part of the ramp over which it has an easement but do not limit the time or circumstances when it can use its easement.

The language of the easement and the CC&Rs as a whole support the trial court's conclusion that the term "reasonably necessary" only spatially limits the easement. The easement states that it is for ingress and egress across portions of a ramp as is reasonably necessary to move aircraft to the airport's runway. No words in the easement limit when the aircraft movement can occur. As the trial court concluded, "[N]o evidence . . . show[ed] the parties meant to or agreed to limit their easement rights only to when the Foundation or some licensee or guest was not throwing an event on Lot 11."

-11-

The Defendants argue that "reasonably necessary" language must limit the time when the aircraft can be moved because the CC&Rs grant other "perpetual, non-exclusive" easements. But the Defendants do not satisfactorily explain how this difference in language leads to the conclusion that the words "reasonably necessary" limit this easement as to time and circumstance. And elsewhere in the CC&Rs, when the parties wished to limit the time for exercising easement rights granted by the CC&Rs, they did so. The easement for right of entry provides that "entry into any portion of a Lot not generally open to the public shall only be authorized during reasonable hours" after consent from or reasonable notice to the owner. This shows that the parties knew how to temporally limit an easement.

The Defendants next contend that a temporal limitation in the easement would prevent a party from using the other's ramp when another route to the runway was available. It asserts that "[t]he parties were granted primary rights to use their own hangars and ramps, and they did not create an easement so broad that it would eradicate those rights." It contends that because the CC&Rs expressly permit the Foundation's activities on the ramp, the parties could not have intended the broad limitation on those activities created by the trial court's interpretation of the easement.

The CC&Rs incorporate initial rules and regulations that permit use of the property for "aviation-related purposes and for any purpose reasonably incident to such purposes." They also give Kilo Six express discretion to determine the nature of "the use for which a portion of the Property is developed." While language in the CC&Rs may reflect an intent to allow the Foundation to use its ramp for its activities and aircraft display, the owner of a servient estate "retains the use of an easement so long as that use does not materially interfere with the use by the holder of the easement. That principle is well established."[13] Thus, the CC&Rs do not affirmatively allow the Foundation to use its ramp in a manner that materially interferes with Everett Hangar's easement over the relevant portion of the Lot 11 ramp.

And the Defendants' argument that its lease and the Snohomish County Code permit the Foundation to use its ramp in the manner it does fails for the same reason—these rights must yield to Everett Hangar's right to use its easement in the manner intended by the parties to the CC&Rs.[14]

---

[13] Veach v. Culp, 92 Wn.2d 570, 575, 599 P.2d 526 (1979).

[14] The Lot 11 lease requires that the Foundation "use the Premises," defined as including the Lot 11 ramp, "only for the following uses: aircraft hangar for business or private use, including historical aircraft hangar and museum, public education and event venue, with associated space for aircraft repair and maintenance, office, meeting room, lounge, and parking." And the section of Snohomish County Code (SCC) defining "ramp" reflects active use of a ramp "for the parking, maneuvering, loading, unloading and servicing of aircraft while they are on the ground" and does not require that a party keep its ramp vacant. SCC 15.08.065.

The Defendants ask the court to consider the meaning given "reasonably necessary" in other contexts involving easements. For example, when deciding if an easement by implication exists, a court can consider the degree of necessity for the easement.[15] But the absence of necessity is not conclusive.[16] In addition, the test of necessity is whether the party claiming an implied easement can reasonably create a substitute.[17] The trial court found that the area needed to move aircraft from Everett Hangar's property included taxiways to the east and west, depending upon the speed and direction of the wind. Substantial evidence supports this finding. Defendants do not identify any alternative taxiway to the west.

Defendants also point to the showing required to condemn a private way of necessity. A party attempting to condemn an easement over adjacent property must show that the easement is reasonably necessary rather than just convenient or advantageous.[18] But again, the Defendants do not identify any alternative western access to the taxiway. Notably, Defendants do not cite any implied easement case or private way of necessity case where a court found an easement reasonably necessary but limited the time or circumstances when it could be used. For each, courts have looked only at the availability of alternative

---

[15] Woodward v. Lopez, 174 Wn. App. 460, 469-70, 300 P.3d 417 (2013).
[16] Woodward, 174 Wn. App. at 469.
[17] Woodward, 174 Wn. App. at 469-70.
[18] Ruvalcaba v. Kwang Ho Baek, 175 Wn.2d 1, 7, 282 P.3d 1083 (2012).

routes. Additionally, Defendants do not cite any case that looked to the law of implied easements or the law of a private way of necessity as authority to limit the time or circumstance for using an express easement.

The Defendants also support their position with language in the rules and regulations requiring lot owners to cooperate. The rules and regulations state that they were "intended to provide for the harmonious operation and co-existence of [aviation-related] uses adjacent to one another. Each Owner shall cooperate and communicate with the other Owners in good faith, and these Rules and Regulations shall be interpreted and applied, in a manner designed to achieve such purpose." But this language provides no support for the contention that the parties intended for the Everett Hangar's easement rights to exist only when the Foundation was not using its ramp for exhibition purposes.

The Foundation also claims that Everett Hangar failed to prove that the Defendants violated its easement rights because Everett Hangar has never failed to fly a plane as scheduled. But substantial evidence showed that Defendants routinely blocked Everett Hangar's access over the Lot 11 ramp and by this action prevented Everett Hangar from using best practices to fly aircraft. Because Everett Hangar had the right to cross relevant portions of the Lot 11 ramp at any time, the Foundation's blocking of the ramp violated Everett Hangar's aircraft easement right and provided justification for injunctive relief.

*Inclusion of a Jet Blast Zone*

The Defendants also claim that the trial court improperly expanded the aircraft easement by deciding that it must include a jet blast zone for safety reasons. Everett Hangar responds that the easement language permitting it to "move" its aircraft must mean under the aircraft's own power. We agree with the Defendants.

The trial court made no finding that the parties intended to include a jet blast zone. Instead, it made two pertinent conclusions of law:

> 4. The Court concludes that within the context of aircraft movement, the easement must include the jet blast zone and object free areas for safety. These areas are established aircraft movement safety zones within which non-aviation activities must be restricted to protect people and property from damage, injury, and even death. With respect to the Lear Jet 60, that area is 240 feet behind the aircraft and up to 45 feet in width, and with respect to the Gulfstream IV, that area is a minimum 200 feet behind the aircraft and 35 feet in width.

> . . . .

> 6. Best practices dictate that aircraft are almost never towed out on to the taxi lane or stopped out on the taxi lane. Best practices provide that aircraft should be operating under their own power upon leaving and returning to the ramp. Towing of aircraft should only be conducted over the shortest distance possible. It is unreasonable to expect Plaintiff to tow its aircraft out onto the taxi lane of Kilo 7 to avoid jet blast to the [Foundation's] vintage aircraft. It is entitled to reasonable use of its easement across Lot 11.

The easement language does not mention a jet blast zone. The trial record contains no direct evidence about the parties' intent concerning jet blast.

But the size of Lot 11, the size of the jet blast zones, the past practices of Everett Hangar, and the impact of a jet blast zone on operations on Lot 11 show that the parties did not intend to include a jet blast zone as part of the easement.

Testimony shows that jet blast zones change depending on variables including the size of the aircraft engines, wind patterns, and the position of the plane. For Everett Hangar's Learjet 60, the jet blast zone can be 240 feet long and 45 feet wide. Lot 11 is 188 feet wide. Thus, the trial court's injunction protecting the jet blast zone would require the Foundation to keep its entire ramp clear at all times. In addition, the Foundation would need to keep its hangar bay doors closed to protect the property and persons inside whenever the Learjet 60 used the Lot 11 ramp under power because the plane's jet blast would sweep into the Foundation's hangar as the plane turned if the doors were open.

Everett Hangar's own witnesses testified that it tows one of its planes to the Kilo 7 taxiway whenever it is preparing both its planes for departure. It also tows its planes from the hangar to the Lot 12 ramp for every flight. This undermines the purported safety justification for including a jet blast zone in the easement.

Finally, the Snohomish County Code prohibits the operation of an aircraft in a manner that might allow jet blast to harm people or property.[19] Including the jet blast zone in the easement across Lot 11 appears inconsistent with this requirement, given the size of the Lot 11 ramp and the potential danger for the contents and occupants of the Lot 11 hangar.

At the time the parties created the easement, they contemplated similar aircraft operations on Lots 11 and 12. Nothing suggests that they intended to prefer the operations on Lot 12 over those on Lot 11. Including a jet blast zone in the easement would do that because of the turn required to move a plane from the Lot 11 ramp to the taxiway when no similar turn is required to cross Lot 12.

The trial court erred when it decided that the aircraft easement must include a jet blast zone.

*Additional Terms of the Injunction: Easement*

The Defendants also claim that the injunction's requirement that the Foundation not place anything in the object free areas and that it not block Everett Hangar's east or west access to the Kilo 7 taxiway are arbitrary, overly broad, and not supported by the facts because those terms could be interpreted to exclude the Foundation from servicing its own planes on the Lot 11 ramp. The

---

[19] "No aircraft engines shall be operated in such a manner that persons, property or other aircraft might be injured or damaged by propeller slipstream or jet blast from said aircraft." SMC 15.08.322.

injunction's language does not specifically account for this situation. But as the occupant of the servient estate, the Foundation has clear parameters: it may use encumbered portions of its ramp so long as that use does not materially interfere with Everett Hangar's ingress and egress across the ramp.[20] Thus, the trial court did not abuse its discretion when it fashioned these challenged injunction terms.

Injunction Terms Based on Breaches of Safety and Security

The Defendants contend that Everett Hangar does not have a right to the injunctive relief ordered by the trial court relating to the safety and security of Lot 12. They claim that the Foundation has no legal obligation to implement certain safety and security measures. They also claim that Everett Hangar cannot enforce safety and security provisions contained in airport regulations and Snohomish County Code. Finally, Defendants claim that the challenged acts and omissions did not violate safety and security provisions in the CC&Rs.

The trial court enjoined Defendants from allowing or permitting anyone to go onto Lot 12 without Everett Hangar's advance, express permission and from propping open the gate on the premises of Lot 11 or Lot 13 without a security guard present at all times. And it required Defendants to build a permanent security fence around Lot 13, similar to Paine Field's perimeter fence. The trial court found that Kilo Six, Historic Hangars, and the Foundation breached the

_____

[20] See Veach, 92 Wn.2d at 575.

CC&Rs requiring perimeter security and that the Association failed to enforce the security provisions against Lot 11 and Lot 13 owners. The trial court also based its decision on Snohomish County Code provisions and Paine Field's rules and regulations.

The Defendants first argue that the trial court read certain CC&Rs provisions out of context to create a legal obligation for Defendants. The trial court wrote, "First, the CC&Rs, under the section titled 'Safety and Security,' provide: 'Because of the nature of the anticipated use of the Property as an aircraft hangar facility for working aircraft, safety and security are of particular concern.'"

The Defendants correctly note that the remaining language in that provision is permissive and does not require adoption of specific safety measures:

> For this reason, the Board is authorized to adopt safety and security rules and guidelines, to direct the Association to install fences, gates, signage, or other physical security measures on the facility, and to take any other measures reasonably necessary to ensure that safe and secure storage and operation of the aircraft located and stored on the Property.

We agree that this permissive language does not entitle Everett Hangar to the relief the trial court ordered.

The trial court also stated, "The CC&Rs also specifically prohibit any activities or other conditions on the property 'which tend to disturb the peace or

threaten the safety of the occupants and invitees of other Lots.'" But the full text

of that provision reads,

> *Noxious Activities.* Any activity which emits foul or obnoxious odors, fumes, dust, smoke, or pollution outside the Lot or which creates noise, unreasonable risk of fire or explosion, or other conditions which tend to disturb the peace or threaten the safety of the occupants and invitees of other Lots.

The Defendants assert that this provision does not address the type of

trespass or perimeter breach alleged by Everett Hangar. Defendants invoke the

principle of ejusdem generis, that "a general term used in conjunction with

specific terms will be deemed to include only those things that are in the same

class or nature as the specific ones."[21] Everett Hangar contends that this rule of

interpretation applies "'only to the extent that the general terms suggest items

similar to those designated by the specific terms.'"[22] It argues this rule does not

apply here because the specific "noxious activities" listed range from health

hazards to safety threats. But "'specific terms modify or restrict the application of

general terms where both are used in sequence.'"[23] Because the words "other

conditions" are used in a sequence to describe prohibited activities that produce

"pollution," "noise," and "unreasonable risk of fire or explosion," we agree with the

---

[21] <u>Viking Bank v. Firgrove Commons 3, LLC</u>, 183 Wn. App. 706, 716, 334 P.3d 116 (2014).

[22] <u>Lombardo v. Pierson</u>, 121 Wn.2d 577, 583 n.4, 852 P.2d 308 (1993).

[23] <u>Lombardo</u>, 121 Wn.2d at 583 n.4 (quoting <u>Dean v. McFarland</u>, 81 Wn.2d 215, 221, 500 P.2d 1244 (1972)).

Defendants that "the provision plainly relates to a narrow category of physical conditions comparable to pollution or fire" not alleged here.

The Defendants next contend that the trial court did not have authority in this case to enforce safety and security provisions contained in airport regulations and Snohomish County Code because Everett Hangar had no ability to sue under those provisions. The Defendants acknowledge their security obligations but argue that the agreements with Everett Hangar do not create those obligations and thus Everett Hangar cannot enforce them.

We disagree. The CC&Rs § 13.6 provides, "Every Owner and occupant of any Lot shall comply with the Governing Documents and other covenants applicable to its Lot. Failure to comply shall be grounds for an action . . . by any aggrieved Lot Owner(s) . . . for . . . injunctive relief."

While the definition of "governing documents" in the CC&Rs does not include the lot leases, each lot lease contains covenants applicable to that lot that require the lot owners to comply with airport and county security regulations to ensure that employees and invitees have proper identification in restricted areas. We conclude that § 13.6 permits Everett Hangar's action to enforce these covenants.

And we agree with the trial court's conclusions that Kilo Six, Historic Hangars, and the Foundation breached rules and regulations found in the

-22-

Snohomish County Code and Paine Field rules. The Snohomish County Code defines "restricted area" to include "ramp areas, and necessary rights-of-way" and requires that the airport manager approve people to enter restricted areas and that those people wear proper identification.[24] Paine Field driving regulations require that all areas within the security fence and not open to the general public remain secure. And the Paine Field Airport Certification Manual limits access onto carrier aprons and explains standards for perimeter security fencing at the airport.

Substantial evidence supports the trial court's finding that the Foundation breached these safety and security regulations when its invitees gained unrestricted access to the Lot 11 ramp and, in turn, to Lot 12 property, as well as when it allowed the gate on Lot 13 to remain open.

The Defendants contend that the CC&Rs § 4.5 directly absolves the Association of responsibility for safety and security measures and places the responsibility on owners to ensure safety of their own lot. That provision states, in part,

> The Association may, but shall not be obligated to, maintain or support certain activities within the Property designed to enhance the safety of the Property. NEITHER THE ASSOCIATION, DECLARANT, NOR ANY SUCCESSOR DECLARANT SHALL IN ANY WAY BE CONSIDERED INSURERS OR GUARANTORS OF SECURITY OR SAFETY WITHIN THE

---

[24] SCC 15.08.066, .210.

-23-

PROPERTY, NOR SHALL ANY OF THEM BE HELD LIABLE FOR ANY LOSS OR DAMAGE BY REASON OF FAILURE TO PROVIDE ADEQUATE SECURITY OR INEFFECTIVENESS OF SECURITY OR SAFETY MEASURES UNDERTAKEN.

But, as Everett Hangar notes, this provision applies only to the Association and declarant and does not prevent it from suing Historic Hangars and Kilo Six as lot owners for breach of the CC&Rs. More significantly, it does not limit any action for injunctive relief, only liability for monetary damages.

Because the CC&Rs provide Everett Hangar grounds to assert an alleged breach of safety and security based on noncompliance with provisions of Snohomish County Code and Paine Field regulations, we conclude that Everett Hangar has an equitable right to the relief the trial court awarded.

*Terms of Injunction: Safety and Security*

The Defendants argue that the injunctive relief the trial court granted to remedy Kilo Six, Historic Hangars, and the Foundation's safety and security breaches was overly broad, arbitrary, and without legal basis. Also, they claim that the trial court failed to fit the injunction to the facts, circumstances, and equities of this case.[25]

Defendants first claim that enjoining the Foundation and other defendants from "allowing, permitting, or suffering" any person to enter Lot 12 without advance, express permission directly contradicts the Foundation's own

---

[25] See Brown, 105 Wn.2d at 372.

easements over Lot 12. We agree. The trial court cannot fashion relief for Everett Hangar that relieves Everett Hangar's lot from encumbrances created by the CC&Rs. The aircraft easement encumbering Lot 12 does not require advance, express permission before each or any use.

The Defendants also claim that the injunction's requirements that they not prop open the gates or doors on Lot 11 or Lot 13 without security guards and that they build a security fence along the perimeter of Lot 13 are arbitrary and unsupported by the record. We conclude that the trial court properly fashioned relief in requiring the Foundation to provide security at open gates because the Foundation had a duty to limit access to its airside operations and those of its neighbors. But because the alterations to the premises require Paine Field's approval under the lot leases and because the trial court concluded that "[t]here is no evidence that Snohomish County has or would approve additional fencing on Lots 11, 12, or 13," we conclude that the trial court acted arbitrarily when it required the Foundation and other defendants to build a fence on Lot 13.

The trial court abused its discretion when it required advance, express permission and when it required construction of a perimeter fence.

Count III Violation

The Defendants challenge the trial court's conclusion that "the Kilo Six Owners Association has failed to maintain the common areas, including security

-25-

fences between and around the lots to prevent unauthorized access to Lot 12 due to the activities conducted on Lots 11 and 13." The Defendants claim that the permissive language of the CC&Rs does not impose on the Association an enforceable duty under the CC&Rs to maintain safety and security. Because the pertinent language about the Association's duties is permissive rather than mandatory and reflects an intent for each owner to be responsible for its own lot's security, we agree.

The Defendants also assert that because Everett Hangar did not bring this claim against Historic Hangars, the trial court erroneously imputed liability to Historic Hangars. We agree. Finally, since the relief sought in count III was premised on the Association's breach of duties it owed to Everett Hangar, the trial court had no legal basis to impose liability on Kilo Six, as an Association member, for the alleged breaches.

Dismissal without Prejudice

Sessions claims that the trial court improperly dismissed Everett Hangar's claims against him "without prejudice." A trial court properly dismisses a case with prejudice after an adjudication on the merits, "while a dismissal 'without prejudice' means that the existing rights of the parties are not affected by the dismissal."[26] Because the trial court decided the merits of the claims brought

---

[26] Parker v. Theubet, 1 Wn. App. 285, 291, 461 P.2d 9 (1969) (citing Maib v. Md. Cas. Co., 17 Wn.2d 47, 135 P.2d 71 (1943)).

-26-

against Sessions, the trial court erred when it dismissed the case "without prejudice."

## Attorney Fees at Trial

The Defendants make a number of challenges to the trial court's attorney fee decision. They claim that the trial court should not have awarded any party attorney fees and costs because all parties prevailed on major issues at trial. And they argue that even if the trial court properly awarded Everett Hangar attorney fees, the court erred when it did not apply a proportionality approach. Finally, they claim that the trial court did not properly scrutinize Everett Hangar's fee request and awarded an unreasonable amount.

The only basis any party cites to support an attorney fee award is the CC&Rs provision that "[i]n any action to enforce the provisions of this Declaration or Association rules, the prevailing party shall be entitled to recover all costs, including, without limitation, reasonable attorneys' fees and court costs, reasonably incurred in such action." Generally, a party prevails when it receives an affirmative judgment in its favor.[27] But a defendant can also recover fees and costs as a prevailing party if it successfully defends against a plaintiff's claims.[28]

---

[27] Marassi v. Lau, 71 Wn. App. 912, 915, 859 P.2d 605 (1993), abrogated on other grounds by Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 200 P.3d 683 (2009).

[28] Cornish Coll. of the Arts v. 1000 Va. Ltd. P'ship, 158 Wn. App. 203, 231-32, 242 P.3d 1 (2010).

In contract disputes where "'several distinct and severable claims'" are at issue, the difficulty in deciding which party prevailed requires a court to apply a proportionality approach, where "each party is awarded attorney fees for the claims on which it succeeds or against which it successfully defends and the awards are then offset."[29]

Everett Hangar brought claims I through IV of its complaint under the CC&Rs or the Association bylaws. The CC&R fee provision applies only to these claims. Here, the trial court awarded Everett Hangar relief on each of these claims and thus properly awarded Everett Hangar attorney fees.

The Defendants assert that the trial court did not scrutinize Everett Hangar's fee request when it awarded Everett Hangar its full fees and failed to justify its award with findings and conclusions. A trial court "'must take an *active* role in assessing the reasonableness of fee awards'" and must support an attorney fee award with findings and conclusions.[30] This requirement allows an appellate court to see from the record if a trial court thought services were reasonable or essential to the outcome or, alternatively, duplicative or

---

[29] Cornish Coll., 158 Wn. App. at 231-32 (citing Marassi, 71 Wn. App. at 918).

[30] Berryman v. Metcalf, 177 Wn. App. 644, 657-58, 312 P.3d 745 (2013) (quoting Mahler v. Szucs, 135 Wn.2d 398, 434-35, 957 P.2d 632 (1998), abrogated on other grounds by Matsyuk v. State Farm Fire & Cas. Co., 173 Wn.2d 643, 663, 272 P.3d 802 (2012)), review denied, 179 Wn.2d 1026 (2014).

unnecessary.[31] Here, the trial court failed to enter findings and conclusions to support its order awarding attorney fees and costs. At the hearing about fees, the trial court did state,

> In this particular case I did take a close look at the team and what they were doing. I didn't find a lot of duplication, I didn't find that there were too many people working on the case. I find that this is a very fact-dependent case. . . . And for those reasons I find that the work that was done was appropriate. The attorneys' fees that have been charged are reasonable, the rates are reasonable, and I'm going to award them as requested.

But the record "must do more than give lip service to the word 'reasonable.' [It] must show how the court resolved disputed issues of fact and the conclusions must explain the court's analysis."[32] When a trial court fails to address specific objections that time billed was duplicative or unnecessary, this failure constitutes reversible error.[33] In the trial court, the Defendants opposed Everett Hangar's attorney fees request. They asserted that it sought fees "for wasteful or unsuccessful theories, for insufficiently documented time, and for matters not strictly related to the litigation." Because the trial court's comments at the hearing fail to explain these specific objections, the trial court erred when it did not issue findings and conclusions to explain its award for costs and fees.

---

[31] Berryman, 177 Wn. App. at 657-58 (quoting Mahler, 135 Wn.2d at 435).
[32] Berryman, 177 Wn. App. at 658.
[33] Berryman, 177 Wn. App. at 658-59.

Attorney Fees on Appeal

Both parties ask for fees and costs on appeal under RAP 18.1 and § 4.2 of the CC&Rs. Because no party substantially prevails on appeal, we decline to award fees and costs.[34]

## CONCLUSION

The trial court properly concluded that the parties intended to limit the aircraft easement to area but not time and properly exercised its discretion to fashion injunctive relief on this basis. The trial court abused its discretion to the extent it provided injunctive relief based on its conclusion that the aircraft easement included a jet blast safety zone. The trial court properly concluded that the Foundation, Kilo Six, and Historic Hangars violated county and airport safety and security provisions enforceable by Everett Hangar under the CC&Rs. Thus, the trial court properly exercised its discretion to fashion relief on this basis, but, as previously noted, some of that relief was overly broad or arbitrary. This includes injunction provisions impairing the Foundation's aircraft easement over Lot 12 and the requirement that the Foundation build a fence around Lot 13. The trial court erred when it did not dismiss the claims against Sessions with prejudice and further erred when it decided that the Association and its member organizations Historic Hangars and Kilo Six violated the bylaws as alleged in

---

[34] Peterson v. Koester, 122 Wn. App. 351, 364, 92 P.3d 780 (2004).

count III of Everett Hangar's complaint. Finally, we remand the issue of attorney fees for recalculation and entry of findings and conclusions, and we decline to award attorney fees and costs on appeal as no party substantially prevailed. Thus, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

_Leach, J._

WE CONCUR: